FREDERICK GRESSMAN, as Administrator of the Estate of MARGARET ENSING, Deceased, Respondent, *v.* THE MORNING JOURNAL ASSOCIATION et al., Appellants.

Libel — justification by defendants — damages — reduction of damages by facts proved in justification — facts proved in justification of one libelous statement may not be considered in mitigation of another.

Where defendants in an action for libel have, under section 536 of the Code of Civil Procedure, pleaded facts in justification and have proved some of such facts and, therefore, the truth of some relevant portions of the article, jurors are at liberty to take them into consideration, in reduction of an amount of damages, which would have been justified in case of a wholly false and reckless publication.

Damages given as compensation in libel cases should be precisely commensurate with the injury, but, as the amount of damages is peculiarily within the province of the jury, the jurors may consider how far the truth of portions of a libelous article may tend to show that a plaintiff ought not to have that amount of compensation, which he might justly claim if his reputation had been unaffected by the facts proved.

If the facts proved in justification, in such a case, lend some color of verity to the statements complained of as injurious, and the element of actual malice is wanting, a plaintiff should not be entitled to receive the same damages for the injury as if his reputation was shown to have been wholly beyond unfavorable criticism or comment.

Where the article complained of in an action for libel contained two distinct and independent libels so that the plaintiff is entitled to damages by way of compensation for either statement, if false, and some of the facts proved in justification relate to one of the libelous statements and not to the other, the defendant is not entitled to have the trial court instruct the jurors generally "that in reduction of compensatory damages, the jury may consider each and every statement in the article, which is proved to be true." The facts proved with respect to the one libelous statement do not tend in justification of the other and whatever facts might properly be considered by the jurors, in mitigation, or reduction, of the damages for making the one false statement, should not, necessarily, govern their discretion in estimating the damages sustained from the other.

*Gressman* v. *Morning Journal Assn.*, 126 App. Div. 913, affirmed.

(Argued January 27, 1910; decided February 15, 1910.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered August 11, 1908, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The action was brought by plaintiff's intestate to recover damages for the injury caused to her reputation by a libelous article published of her in the defendant's newspaper. It was headlined and, in part, read as follows:

"MARGARET'S LOVE IS HER UNDOING.

"Nurse of German Hospital Insane.

"She Fell in Love with a Patient Whom she did not Know was Married.

"A romance, which had its beginning in a German Hospital, ended suddenly in the observation department of

Bellevue Hospital. The persons in this romance are the 29 year old nurse Margaret Ansing and a patient thus far unknown. Since yesterday Margaret is in the ward for the insane because her mind gave way on account of her love for this man, unfortunately already married."

It, then, referred to her intended career as a trained nurse being cut short by her unhappy love. It gave a statement, purporting to have come from a physician and from nurses, to the effect that, after the patient's discharge, she had begun a correspondence with him, not knowing he had a wife, which the wife discovered and reported to the management of the hospital ; that she met him with his wife on the street, suffered a mental collapse and acted queerly ; that upon the wife, again, complaining, her resignation was requested and that she, then, collapsed entirely, threatened self destruction, was kept under constant watch and, by the advice of the physician, was sent to Bellevue Hospital. The complaint charged that the publication imputed to the plaintiff insanity and consequent incompetency to discharge the duties of a nurse and " had otherwise injured her in her good name, fame and reputation " to her damage, etc. In partial defense were pleaded facts in justification and in mitigation of damages. Upon the trial, it was conceded that the newspaper had a large daily circulation and the evidence bore upon the subject-matter of the libelous article. At the time of the publication, the plaintiff, a young unmarried woman, who had come from Holland, had not completed her course of study to become a trained nurse and was serving as a school nurse in the hospital. She married the plaintiff, after the commencement of the action, and died after the judgment in her favor. The plaintiff's evidence established, or tended to establish, that, after Lacy, the patient, had been discharged from the hospital, she had met him upon two occasions, not sought by her ; that there had been nothing in their relations to furnish any ground of accusation against her of improper conduct ; that, as the result of Mrs. Lacy's accusations to the hospital authorities, she suffered great mental distress, at being falsely accused and at being discharged

from her position, and in her depression took an overdose of hyocine, and that she remained in Bellevue Hospital of her own accord. On the part of the defendants, the evidence showed what Lacy's wife had observed of the meetings of her husband with the plaintiff; what her accusations to the hospital authorities were founded upon; how the plaintiff had sought to poison herself, after being accused, and how she was taken to the Bellevue Hospital and placed in the psychopathic ward.

The trial judge held the article to be libelous *per se.* In instructing the jurors, he said that they were to carefully go over the article and "to eliminate so much of it as you find to be substantially the truth; because it is undisputed that a good part, some part of that published story, is absolute truth. You will direct your attention to those portions of it about which there is a question as to whether they are true or not." Then, after stating the two charges of the libelous article, he, further, instructed them that "the disputes on the evidence, such as they may be, you must solve and determine and, after considering them all, if you find the defendant liable, your only remaining duty is to determine the damages that the plaintiff has suffered and, in addition, you will say whether it is a proper case, in your judgment, to award punitive damages, or not." Having concluded his main charge to the jurors, the trial judge was requested "to charge the jury that, in reduction of compensatory damages, the jury may consider each and every statement in the article which is proved to be true." To this, the trial judge replied "No; that cannot be charged; because it is fundamental, as I have already advised the jury, that compensatory damages can never be reduced, if the defendant's liability be fixed." To this ruling the defendants excepted. The jury returned a verdict for the plaintiff, and the judgment thereupon has been unanimously affirmed by the justices of the Appellate Division; leave, however, being given to appeal to this court.

*Clarence J. Shearn* and *Macdonald D. De Witt* for appellants. The trial court erred in charging the jury that "It

is fundamental that compensatory damages can never be reduced, if the defendants' liability be fixed ; " and in refusing to charge, as requested by defendants, " that in reduction of compensatory damages the jury may consider each and every statement in the article which is proved to be true." (*Prince* v. *Brooklyn Eagle*, 16 Misc. Rep. 186 ; *Ullrich* v. *New York Press*, 23 Misc. Rep. 168 ; *Remsen* v. *Bryant*, 24 Misc. Rep. 238 ; 18 Am. & Eng. Ency. of Law, 1107 ; *Oakes* v. *Star Co.*, 119 App. Div. 358 ; *O'Connor* v. *Press Pub. Co.*, 34 Misc. Rep. 564 ; *Holmes* v. *Jones*, 147 N. Y. 59.)

*B. F. Einstein* for respondent. The court did not err in charging the jury that " it is fundamental that compensatory damages can never be reduced if the defendants' liability be fixed," or in refusing to charge, as requested by defendants, " that in reduction of compensatory damages the jury may consider each and every statement in the article which is proved to be true." (*Dinkelspiel* v. *N. Y. E. J. Pub. Co.*, 194 N. Y. 582 ; *Wuensch* v. *Morning Journal Assn.*, 4 App. Div. 110 ; *Cooper* v. *Barber*, 24 Wend. 12.)

GRAY, J. The only question, which we need consider upon this appeal, is the right of the defendants to have the trial court instruct the jurors " that in reduction of compensatory damages, the jury may consider each and every statement in the article, which is proved to be true." The exception to his refusal to so charge presents the question. In so refusing to instruct, and in adding the remark that " as I have already advised the jury, compensatory damages can never be reduced, if the defendant's liability be fixed ", the trial judge relied upon what he had said in his main charge. He had told the jurors that " when the liability of the defendant is established, the injured person, the victim of the libel, the plaintiff, is entitled to what the law calls compensatory damages, being such damages as would be full and complete compensation for the actual wrong done to him, or her. In this case that means the injury to her reputation." He, then,

told them that, in addition to giving actual compensation for the injury, they might give punitive damages, if satisfied that the publication was malicious, or recklessly and wantonly done. They were told to go over the article, some part of which was true, and, after determining the disputes on the evidence, then, if finding the defendants liable, "to determine the damages that the plaintiff has suffered and, in addition, say whether it is a proper case to award punitive damages, or not." While, by these instructions, the trial judge intended to have the jurors understand that they were to determine the questions of the defendants' liability and of the amount of damages to be awarded upon a consideration of all the evidence before them, the ruling upon the request might, not unreasonably, be deemed to have left their minds in some doubt whether they could take into consideration the fact that portions of the article were proved to be true and, in consequence, reduce the amount of compensation, which, otherwise, they would be disposed to award. Had there been but one libelous statement in the publication, to which the request would be applicable, I think that the defendants would have been entitled to have that request granted. The jurors might have believed that, if they came to a determination that the defendants were liable to the plaintiff for publishing a libelous article, the amount of the damages to be awarded for the injury must not be influenced by any consideration of the fact that some of the statements were true. The effect of our Code provision, as I understand it, is to allow the influence of such consideration. Section 536 permits a defendant to plead and to prove facts "not amounting to a total defense, tending to mitigate or otherwise reduce the plaintiff's damages." The defendants having set up justification and having proved some of the facts pleaded and, therefore, the truth of some relevant portions of the article, the jurors were at liberty to take them into consideration, in reduction of the damages, which a wholly false and reckless publication would have justified. In *Wachter* v. *Quenzer*, (29 N. Y. 547), the opinion states the doctrine to be this : "The defendant may set up a justification, or

he may allege facts short of a full justification, but giving some color to the charge, by way of modification, or he may do both; and in either case he may prove the facts as they are, though they fall short of a justification; and the jury may take them into consideration for the purpose of mitigating the damages." (p. 551.)

In cases of libel, the law presumes that the plaintiff has been damaged by the publication and the jurors are to reach the amount of the damages from the nature of the libel, the extent of its circulation, the social position of the parties and the tendency to injure the plaintiff, in the public estimation of his character. If some of the things said of the plaintiff were shown to be true, their truth, if establishing misconduct, should be allowed to affect the amount of the damages, which, otherwise, the jurors would be minded to award. Damages given as a compensation should be precisely commensurate with the injury; but there is, necessarily, involved in this rule the idea, as the amount of damages is peculiarly within the province of the jury, that the jurors may consider how far the truth of portions of the libelous article may tend to show that the plaintiff ought not to have that amount of compensation, which he, or she, might justly claim, if his, or her, reputation had been unaffected by the facts proved. If the facts proved established that this plaintiff's conduct had lent some color of verity to the statements complained of as injurious, and the element of actual malice was wanting, she should not be entitled to receive the same damages for the injury as if her reputation was shown to have been wholly beyond unfavorable criticism, or comment.

The principle, upon which compensatory, or actual, damages may be reduced, may be stated in the language used in *Robison* v. *Rupert*, (23 Penn. St. 523), a case which is referred to in *Kiff* v. *Youmans*, (86 N. Y. at p. 330), though not one of libel. It was there held that " where there is a reasonable excuse for the defendant, arising from the provocation or fault of the plaintiff, but not sufficient entirely to justify the act done, there can be no exemplary damages, and the cir-

cumstances of mitigation must be applied to the actual damages."

In this case, while the proof falls short of establishing the charge of insanity, or the charge that the plaintiff fell in love with the patient, to her undoing, evidence was given with respect to her actions, which, if the jury believed it, would justify the conclusion that she had been indifferent to her reputation and had conducted herself in such ways as to provoke public comment. There was proof of facts that showed that her mind had been affected by her troubles and, also, of facts tending to prove some part of the statement about her conduct with Lacy. While they did not justify the publication of the article, they might bear upon the amount of the compensatory damages. But the difficulty with the defendants' request is that it was too broad in its scope; inasmuch as it would permit the jurors, in considering the liability of the defendants for each defamatory statement, to take into consideration all of the proof, regardless of its relevancy to the particular statement under consideration. They were correctly instructed that the article contained two distinct and independent libels and the plaintiff was entitled to damages by way of compensation for either statement, if false; for each was defamatory and, therefore, presumably, injurious to the plaintiff's reputation; which is to say, her character in public opinion. Proof by the defendants tending to show that the plaintiff had fallen in love with a patient in the hospital, and that her "love was her undoing", would have constituted no justification for publishing the statement that she was insane. The facts proved by the defendants with respect to the one libelous statement in the article did not tend in justification of the other and whatever facts might properly be considered by the jurors, in mitigation, or reduction, of the damages for making the one false statement, should not, necessarily, govern their discretion in estimating the damages sustained from the other libel. I am not aware of any rule of law to that effect and I think the reason of the thing is opposed to the notion that some truth in the published state-

31

ments concerning the plaintiff's conduct with Lacy should be regarded as a palliation of the injury done her in stating that she was insane.

For these reasons, I advise the affirmance of the judgment.

CULLEN, Ch. J., HAIGHT, WERNER, HISCOCK and CHASE, JJ., concur; WILLARD BARTLETT, J., absent.

Judgment affirmed, with costs.